```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
KEVIN HERNANDEZ,                                             :
                                      Plaintiff,             :
                                                             :         18 Civ. 1808 (LGS)
              -against-                                      :
                                                             :         **OPINION AND ORDER**
NEW YORK CITY DEPARTMENT OF                                  :
SANITATION, ET AL.                                           :
                                                             :
                                                             :
                                      Defendants.            :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/29/18

LORNA G. SCHOFIELD, District Judge:

Plaintiff Kevin Hernandez brings this action against the New York Department of Sanitation ("DSNY") and several individuals in their official and individual capacities, alleging violations of federal, state and city law. Plaintiff alleges discrimination based on disability, caregiver status and race, as well as FMLA interference and retaliation. Defendants move to dismiss only the claims based on race -- the discrimination claim against all Defendants under § 1981 (Count V) and against DSNY alone under Title VII (Count VI), and the retaliation claim against DSNY under Title VII (Count VII). For the reasons stated below, Defendants' partial motion to dismiss is granted.[1]

---

[1] For the same reasons, the discrimination and hostile work environment claim based on race under the New York State Human Rights Law, Executive Law § 296, (Count IX) is also dismissed. *See Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 53–54 (2d Cir. 2018) (affirming district court's *sua sponte* dismissal of plaintiff's retaliation claim).

## I. BACKGROUND

The following facts are taken from the Amended Complaint (the "Complaint") and assumed to be true for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

Plaintiff Kevin Hernandez is an African American sanitation worker at the DSNY. The DSNY hired Plaintiff in 2012, and promoted him to the sanitation supervisor position in 2015. Defendants Garcia, Colletti, Satchell and Milian, each of whom are Caucasian, were Plaintiff's supervisors.

In November 2016, Plaintiff asked Colletti for a schedule change so he could care for his sick father. After several weeks of inaction on Colletti's part, Plaintiff informed Colletti that he would be filing a hardship application to request his schedule change. After becoming "enraged," Colletti told Plaintiff that his request for an accommodation was "unacceptable" and that Plaintiff would be a "disgrace" if he filed the hardship request. Colletti also warned Plaintiff that he should transfer to another district. In December 2017, Plaintiff submitted his hardship application, which was granted on January 5, 2017.

The Complaint alleges that after Plaintiff submitted his hardship request, the individual Defendants, who are Caucasian, "subjected Plaintiff to disparate treatment and treated Plaintiff less[ ]favorably than his Caucasian counterparts" and "discriminated and retaliated against Plaintiff on the basis of his race, associated disability, and request for a reasonable accommodation in order to complete his primary caregiver responsibilities." For example, on January 9, 2017, during Plaintiff's first week on his modified schedule, Satchell issued Plaintiff an unwarranted disciplinary complaint for his "failure to supervise." On January 13, 2017,

Satchell issued Plaintiff a disciplinary complaint for another supervisor's failure to safeguard keys.

On March 9, 2017, Plaintiff submitted an application for intermittent leave to care for his father. On the same day, Satchell sent Plaintiff a text message stating, "The union says if you put in for the FMLA leave you will not be able to lock into the 12 to 8 shift or any shift." Satchell issued Plaintiff a citation for a "failure to carry out assign[ed] tasks." Plaintiff had not received disciplinary complaints prior to his requests for a schedule change and leave. After his hardship request, Defendants "treated Plaintiff with utter hostility" and assigned him "a greater workload and more physically[ ]intensive tasks than other Caucasian DSNY supervisors." Colletti and Satchel also prevented Plaintiff from selecting his shift preference according to union rules, giving visiting supervisors priority over him.

On March 11, 2017, "Plaintiff complained to [Satchell] that Defendants were discriminating against him because of his race and caregiver accommodation request," that the negative citations issued against him were retaliatory and that Colletti engaged in "aggressive and harassing conduct towards him in retaliation for Plaintiff's request for an accommodation." Despite this complaint, no investigation ensued. Instead, Satchell, Colletti, and Milian filed a complaint with the DSNY, falsely alleging that Plaintiff physically threatened them during his conversation with Satchell. Following the March 11 meeting, Plaintiff saw his nametag attached to a transfer slip twice. On March 27, 2017, Plaintiff received his first "unsatisfactory" job performance evaluation. On April 1, 2017, Plaintiff's boots were stolen from his locker. On the same day, Plaintiff transferred to another unit.

## II. RELEVANT LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] . . . claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

## III. DISCUSSION

The claims based on alleged racial discrimination are dismissed because the Complaint does not allege facts sufficient to give rise to an inference of discriminatory intent on the part of Defendants.[2]

Discriminatory intent is an essential element of both a Title VII and a § 1981 claim, whether based on a theory of discrimination or hostile work environment. To survive a motion to dismiss a Title VII discrimination claim, a plaintiff must plausibly allege that his employer

---

[2] Additional possible deficiencies in the Complaint, such as the failure to plead an adverse action, are not addressed.

took adverse employment action against him, and that "his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *Robinson v. Concentra Health Servs., Inc*., 781 F.3d 42, 45 (2d Cir. 2015) (internal quotation marks omitted) ("[T]he same core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . ."). Similarly one of the elements of a race-based hostile work environment claim is conduct that creates a hostile or abusive environment "because of [the] employee's protected characteristic, such as race or national origin," although the protected characteristic need not be "the only motivating factor." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20, 23 (2d Cir. 2014) (alteration, emphasis and internal quotation marks omitted). With respect to discriminatory intent, at this initial stage, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. The Complaint fails to reach even this low bar.

The only specific facts that the Complaint pleads relating to race are that the Defendant supervisors are Caucasian, while Plaintiff is African American. The Complaint's other references to race are entirely conclusory -- for example, that "Defendants discriminated and retaliated against Plaintiff on the basis of his race;" "Defendants subjected Plaintiff to a hostile work environment on the basis of his . . . race"; and "It became abundantly clear to Plaintiff that DSNY was subjecting him to stricter scrutiny and harsher criticism in retaliation for his request for a scheduling accommodation because of his . . . race". Plaintiff does not allege any facts -- such as racially derogatory remarks -- that plausibly show that the alleged mistreatment of

5

Plaintiff was racially motivated. The Complaint alleges that "Defendants subjected Plaintiff to disparate treatment and treated Plaintiff less-favorably than his Caucasian counterparts," but does not specify who the counterparts were, how they were similarly situated or how they were treated. *See, e.g.*, *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (granting motion to dismiss on a disparate treatment claim when the plaintiff failed to describe who the comparators are, what their responsibilities were, how their workplace conduct compared to the plaintiff's, or how they were treated). To establish an inference of discrimination, a plaintiff must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted).

1. **Retaliation**

The Title VII retaliation is dismissed because it fails to plead facts sufficient to allege a prima facie case of retaliation. To survive a motion to dismiss, a retaliation claim "must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) 'because' he has opposed any unlawful employment practice," *Vega*, 801 F.3d at 90, and specifically "that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

The retaliation claim fails because the Complaint does not plausibly allege that Plaintiff engaged in a protected activity, nor does it plausibly show a causal link between the alleged protected activity and the retaliatory actions.

a. **Protected Activity**

The Complaint alleges that Plaintiff suffered retaliation as a result of complaining to Satchell "that Defendants were discriminating against him because of his race . . . ." This

grievance does not qualify as a protected activity under Title VII because insufficient facts are alleged to support a good faith belief that Plaintiff had suffered racial discrimination.

Although a plaintiff alleging retaliation under Title VII need not show that the conduct he opposed was in fact unlawful under the statute, he must plead facts that, if true, show that the "the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted). "Mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith." *Id.* at 16 (alterations, emphasis and internal quotation marks omitted). As discussed above, the Complaint fails to allege facts that would support a good faith reasonable belief that Plaintiff's employer engaged in racial discrimination.

### b. "But-For" Causation

"As to the second element [of the *prima facie* case], implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Id.* at 15 (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (1998)). "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, [for purposes of Title VII retaliation claim,] neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Id.* at 17. The Complaint fails to

allege facts that would plausibly show that the employer understood that Plaintiff was complaining about racial discrimination when he complained to Colletti.

The Complaint alleges that (1) Plaintiff "complained about Colletti's aggressive and harassing conduct towards him in retaliation for Plaintiff's request for an accommodation," and (2) Plaintiff told Satchell that the "disciplinary actions taken against him were unwarranted and retaliatory." Neither of these statements conveys race-based mistreatment.

The retaliation claim also fails because the Complaint does not plausibly show a causal connection between his protected activity and the retaliatory actions. A causal connection in retaliation claims can be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (internal quotation marks omitted).

Although the Complaint alleges that Plaintiff's complaint was closely followed by the allegedly retaliatory actions, in this case the alleged temporal proximity is insufficient. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *accord Washington v. NYC Dep't of Educ.*, No. 16 Civ. 9588, 2017 WL 4687982, at *11–12 (S.D.N.Y. Oct. 16, 2017), *aff'd*, -- F. App'x --, No. 17 Civ. 3776, 2018 WL 3342324, at *3 (2d Cir. July 9, 2018) (summary order). Courts look to the severity of the adverse actions taken before the protected activity and how long before the protected activity the adverse actions occurred to determine if they sever the causal link created by temporal proximity. *See, e.g.*, *Slattery*, 248

F.3d at 94–95 (analyzing the significance of the disciplinary actions preceding the protected activity and how far back from the protected activity they began to determine whether they severed the link between the plaintiff's protected activity and his termination).

As in *Slattery* the first series of negative incidents -- Colletti yelling at Plaintiff for filing a hardship application and Plaintiff's first negative citation -- occurred several months before the alleged complaint of race-based discrimination. *See id.* at 95 (adverse actions commenced five months before the protected activity). As for the significance of the actions, the Complaint alleges that Plaintiff received three negative citations over a three-month period, his shift preferences were denied, he was assigned a greater and more physically demanding workload and Colletti warned Plaintiff that his requests for accommodation were unacceptable and that he should transfer. This negative treatment, all of which occurred before the alleged protected activity, is sufficiently significant to sever the causal link between Plaintiff's March 11 complaint and his negative performance evaluation, the transfer slips, and the stolen boots incident. *See Williams v. Time Warner Inc.*, No. 09 Civ. 2962, 2010 WL 846970, at *6 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7, 9–10 (2d Cir. 2011) (summary order) (holding that no causal inference arises between the plaintiff's complaint about racial stereotyping and her termination when the plaintiff's job responsibilities had been constrained and she was excluded from meetings and events prior to the protected action).

This case is unlike *Allen v. J.P. Morgan Chase & Co.*, which held that negative performance reviews and warnings that occurred before the plaintiff's protected activity were not sufficiently significant to sever the causal link between the plaintiff's protected activity and a subsequent demotion. No. 06 Civ. 8712, 2009 WL 857555, at *8, 12 (S.D.N.Y. Mar. 31, 2009). Here, the ultimate retaliatory adverse actions were less severe than in *Allen* -- an unsatisfactory

9

performance rating and co-worker mistreatment, rather than a demotion -- such that the earlier negative citations and warnings are sufficiently significant in relation to the allegedly retaliatory acts to sever the causal link between them and the complaint of racial discrimination.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is GRANTED. Counts V, VI, VII and IX are DISMISSED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 47.

Dated: October 29, 2018
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE